UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Docket No. 05-163-P-H |
| | ) | |
| CAP QUALITY CARE, INC., | ) | |
| | ) | |
| Defendant | ) | |

## MEMORANDUM DECISION ON PLAINTIFF'S APPLICATION FOR PRE-JUDGMENT REMEDIES

The plaintiff seeks imposition of the pre-judgment remedies of receivership or sequestration pursuant to 28 U.S.C. §§ 3101, 3103 and 3105 in this action against a methadone maintenance clinic located in Westbrook, Maine. Application for Pre-Judgment Remedies ("Application") (Docket No. 7) at 1. It contends that such relief is authorized by the Federal Debt Collection Procedures Act ("FDCPA"), 28 U.S.C. § 3001 *et seq.*, because "CAP is wasting assets to the detriment of the United States" by paying the attorney fees incurred by its consultant, Marc Shinderman, M.D., in a related criminal proceeding. Application at 1. I deny the application.

The complaint in this action alleges multiple violations of statutes relating to controlled substances and the federal Medicaid program, as well as various common-law counts. First Amended Complaint (Docket No. 2). The government's application contends that the combination of statutory penalties, common-law remedies and disgorgement of illegal profits which it seeks amounts to a "likely recovery" that "would exceed $500,000." Application at 8. It further contends that the defendant's paying of criminal defense fees for Shinderman, who is "merely a CAP consultant," *id.* at

1

11-12, constitutes wasting of the defendant's property with the effect of hindering or delaying the ability of the plaintiff to recover, *id*. at 11. It further argues that such payment constitutes evidence of a substantial danger that the defendant's property will be "lost, concealed, materially injured or damage[d], or mismanaged," *id*. at 12, and asks that the funds already so expended by the defendant be sequestered, *id*. at 13.

First, the payment of Shinderman's legal fees cannot be considered a waste of the defendant's resources or a loss or mismanagement of those resources unless it is shown that the defendant will, by making such payments, render itself unable to pay what the plaintiff contends it has shown is its "likely recovery" in this action. The plaintiff's application makes no attempt to do so. The affidavit of Evan J. Roth, which was filed with the application, does state that the law firm representing both Shinderman and the defendant in this action "has represented to me that CAP's financial resources are sufficiently limited such that there is reason to believe that CAP would be unable to satisfy a judgment in this case that exceeds $500,000." Declaration of Evan J. Roth (Exh. 4 to Application), ¶ 6. I will assume for purposes of evaluating this motion that the presence of such information in the affidavit, unmentioned in the application, is sufficient.

After the application, the defendant's opposition to the application and the plaintiff's reply were filed, I contacted counsel and asked them to brief the question whether the FDCPA applies in any event to this action. Docket No. 27. Those briefs have now been filed. Docket Nos. 28, 30.

The relevant statutes provide as follows:

> **(a) Application.** — **(1)** The United States may, in a proceeding in conjunction with the complaint or at any time after the filing of a civil action on a claim for a debt, make application under oath to a court to issue any prejudgment remedy.
> \* \* \*
> **(3)** Such application shall —
> \* \* \*

>> **(B)** set forth with particularity that all statutory requirements under this chapter for the issuance of the prejudgment remedy sought have been satisfied.
>
> **(b) Grounds.** — Subject to section 3102, 2103, 3104, 0r 3105, a prejudgment remedy may be granted by any court if the United States shows reasonable cause to believe that —
>> **(1)** the debtor —
>>> \* \* \*
>>
>> **(B)** has or is about to assign, dispose, remove, conceal, ill treat, waste, or destroy property with the effect of hindering, delaying, or defrauding the United States . . . .
>>> \* \* \*
>
> **(c) Affidavit.** — **(1)** The application under subsection (a) shall include an affidavit establishing with particularity to the court's satisfaction facts supporting the probable validity of the claim for a debt and the right of the United States to recover what is demanded in the application.
>
> **(2)** The affidavit shall state —
>> **(A)** specifically the amount of the debt claimed by the United States and any interest or costs attributable to such debt;
>>
>> **(B)** one or more of the grounds specified in subsection (b); and
>>
>> **(C)** the requirements of section 3102(b), 3103(a), 3104(a), or 3105(b), as the case may be.

28 U .S.C. § 3101 (a)-(c)(2).

> **(a) Appointment of a receiver**. — If the requirements of section 3101 are satisfied, a court may appoint a receiver for property in which the debtor has a substantial nonexempt interest if the United States shows reasonable cause to believe that there is a substantial danger that the property will be removed from the jurisdiction of the court, lost, concealed, materially injured or damaged, or mismanaged.

28 U.S.C. § 3103(a).

> **(a) Property subject to sequestration.** — **(1)** Any income from property in which the debtor has a substantial nonexempt interest may be sequestered pursuant to a writ of sequestration in an action or proceeding against a debtor on a claim for a debt and may be held as security to satisfy such judgment, and interest and costs, as the United States may recover on such claim.
>
> **(2)** The amount of income sequestered shall not exceed the amount by which the sum of the amount of the debt claimed by the United States and the amount of interest and costs reasonably likely to be assessed against the debtor by the court exceeds the aggregate value of the nonexempt interest of the debtor in any —

>>**(A)** property securing the debt; and
>>**(B)**  property attached, garnished, or in receivership under this
>subchapter.
>
>   **(b) Availability of sequestration.** — If the requirements of section 3101 are satisfied, a court shall issue a writ authorizing the United States to sequester income from property in which the debtor has a substantial nonexempt interest, as security for such judgment (and interest and costs) as the United States may recover on a claim for debt . . . .

28 U.S.C. § 3105(a)-(b).

Two critical terms of the FDCPA are defined as follows:

>   **(3)** "Debt" means —
>   **(A)** an amount that is owing to the United States on account of a direct loan, or loan insured or guaranteed, by the United States; or
>   **(B)** an amount that is owing to the United States on account of a fee, duty, lease, rent, service, sale of real or personal property, overpayment, fine, assessment, penalty, restitution, damages, interest, tax, bail bond forfeiture, reimbursement, recovery of a cost incurred by the United States,  or other source of indebtedness to the United States, but that is not owing under the terms of a contract originally entered into by only persons other than the United States . . . .

28 U.S.C. § 3002(3).  And "'Debtor' means a person who is liable for a debt or against whom there is a claim for a debt." 28 U.S.C. § 3002(4).

The application makes clear that the plaintiff is proceeding only on the basis that the payment of Shinderman's attorney fees would constitute "waste" under 28  U.S.C. § 3101(b)(1)(B). Application at 1, 10, 11.  With specific reference to the application for a receivership, the plaintiff asserts that it has demonstrated that there is a substantial danger that the defendant's property will be "lost, concealed, materially injured or damage[d], or mismanaged," presumably by the payment of Shinderman's attorney fees. *Id*. at 12.  It asserts that the amount sought to be sequestered has "already [been] wasted on Shinderman's criminal defense attorney fees and expenses." *Id*. at 13.

The initial problem with the government's position is that the FDCPA definition of "debt" is written in the present tense.  A "debt" to which the Act applies is one "that is owing."  The

4

government concedes that the defendant "is not currently 'liable for a debt,'" Memorandum of Law in Support of the Applicability of the Federal Debt Collection Procedures Act ("Plaintiff's Memorandum") (Docket No. 30) at 1, but contends that it is nonetheless a debtor because the government has asserted "a claim for a debt" against it, *id*. at 1-2. This interpretation would read the definition of "debt" out of the Act and, as the defendant observes, Defendant's Supplemental Memorandum in Opposition to the Government's Application for Pre-Judgment Remedies ("Defendant's Memorandum") (Docket No. 28) at 4, would allow the federal government to seek prejudgment remedies in virtually every civil action it might file. I agree with the Eleventh Circuit in its recent observation that the FDCPA is inapplicable when the government is not seeking to recover for a judgment or to obtain any assets, but rather "to freeze assets to prevent their disbursement." *SEC v. ETS Payphones, Inc.*, 408 F.3d 727, 735 (11th Cir. 2005). None of the case law cited by the government, Plaintiff's Memorandum at 3-5, supports its contention that penalties and fines sought by the government for the first time in the underlying action are "debts" within the meaning of the FDCPA. In each case, some existing financial obligation to the government was at issue.[1] For example, in *United States v. Teeven*, 862 F. Supp. 1200 (D. Del. 1992), the case on which the plaintiff relies most heavily, the government employed the FDCPA in connection with its attempt to recover government funds allegedly wrongfully transferred to the individual defendants, *id*. at 1207-08, 1210-11. The government did not contend in that case, as it does here, that the mere filing of a claim for fines and penalties justifies the imposition of remedies under the FDCPA.

Perhaps sensitive to the precarious nature of its primary argument, the plaintiff asserts as an alternative that, "at a minimum," it has alleged overpayments to the defendant under the Medicaid

---

[1] Contrary to the argument of the plaintiff, Plaintiff's Memorandum at 3 n.2, the fact that the Act allows for sequestration "in an action against the debtor for damages in tort," 28 U.S.C. § 3105(b)(2), does not change this analysis. First, that subsection still requires that the underlying action involve a "claim for a debt," and the fact that a tort action is specifically mentioned does not mean, as a matter of
(*continued on next page*)

program, payments for services "that either were not rendered or were rendered in a way that violated the rules for Medicaid reimbursement," in the amount of $93,920. Application at 3, 5. Evidence supporting this claim is provided with sufficient particularity in an affidavit that was submitted with the application. Declaration of Eric Hafener (Exh. 2 to Application), ¶¶ 12, 14, 15, 17, 18, 20, 21, 23, 25. The government has established reasonable cause to believe that this sum "is owing on account of . . . overpayment" by the government. 28 U.S.C. § 3002(3)(B). The inquiry does not end there, however.

In order to be granted either of the prejudgment remedies it seeks based on the alleged overpayment, the plaintiff must also demonstrate to the satisfaction of the court that all relevant statutory requirements have been met. 28 U.S.C. § 3101(a)(3)(B). With respect to a receivership, the plaintiff must show reasonable cause to believe that there is substantial danger that the defendant will remove property from the jurisdiction of the court or lose, conceal, materially injure or damage or mismanage its property. 28 U.S.C. § 3103(a). The government has made no attempt beyond a conclusory assertion, Application at 12, to demonstrate that the defendant's payment of Shinderman's attorney fees and costs constitutes mismanagement of the defendant's property or a "loss" of that property, the only portions of the statute that might possibly apply in this case. In addition, the absence of any evidence that payment of Shinderman's attorney fees and costs will render the defendant unable to repay $93,920 makes it impossible for the government to meet the FDCPA requirements for receivership.

The absence of such evidence also dooms the application for sequestration. The government has made no attempt whatsoever to show the amount by which $93,290 exceeds the aggregate value of the nonexempt interest of the defendant in any property otherwise available to secure the alleged debt.

---

basic statutory construction, that an action for fines and penalties, which is not mentioned, must also be included.

*See* 28 U.S.C. § 3105(a)(2).  From all that appears in the plaintiff's submissions, the defendant's business may be generating sufficient income to repay this amount on demand, regardless of the amount it is spending on Shinderman's legal fees.  Thus, there has been no showing of "waste" sufficient to support the application for sequestration.

For the foregoing reasons, the plaintiff's application for prejudgment remedies is **DENIED**.


Dated this 18th day of November, 2005.


/s/ David M. Cohen
David M. Cohen
United States Magistrate Judge